Case No: _____   Inmate Name: Gerald Angelo Barcella

Date: 08/27/20   Inmate IDOC#: 56305

Document Title: Complaint

Total Pages: 20   Inmate Initials Verifying Page Count: GB

Document(s) _____ of _____

Gerald Angelo Barcella 56305
ISCI  Unit 13
P.O. Box 14
Boise, Idaho 83707

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

Gerald Angelo Barcella
       Plaintiff

v.

Corizon Medical, Several
Unnamed Members of Corizon
UMT, Dr. Rebekah Haggard,
Gen Brewer, D.O.N., Rona
Siegert, CCHP-RN,
Warden Alberto Ramirez.
Director Josh Tewalt,
John Does I.-X.
       Defendants

Case No. _____

COMPLAINT

JURY TRIAL DEMANDED

## I. PRELIMINARY STATEMENT

1.  This is a civil rights case brought under 42 U.S.C. §1983 arising out of Defendants' deliberate indifference to Plaintiff's serious medical condition, including serious pain, injury and suffering, imminent pain, injury and suffering and resultant chronic kidney disease and mental anguish.

2.  Deliberate indifference constitutes permanent injury.

3.  This has left Plaintiff with serious and progressively worsening spinal degeneration, foraminal narrowing, serious back and sciatic pain, which will probably leave Plaintiff with serious pain and debility for the rest of his life.

4.  Defendants' actions wrongly  precribing nephro/hepatoxic NSAID drugs, particularly Indocyn, intended for short-term use only, has resulted in Plaintiff being diagnosed with chronic kidney disease.

5.  As a result of his serious, often excruciating, debilitating pain

and development of chronic kidney disease Plaintiff suffers mental anguish from worry, stress, anxiety, feelings of hopelessness and insomnia.

6. Defendants have failed to provide   effective care for Plaintiff's serious medical needs and failed to meet standards of care in the community.

## II. JURISDICTION AND VENUE

7.  This Court has jurisdiction and venue over the subject matter of this complaint under 42 U.S.C 1983; 28 U.S.C 1331 and 1343(a)(3); 28 U.S.C. 2201 ans 2202;  28 U.S.C. 2283 and 2284 and Rule 63 of the Federal Rules of Civil Procedure.

## III. PARTIES

8.  Plaintiff, Gerald Angelo Barcella, is an individual residing at Idaho State Correctional Institution (ISCI) since 2017 and in the custody of the Idaho Department of Corrections (IDOC) since 1998.

9. Defendant Corizon Medical, is a private, for-profit, entity doing business in Ada County, Idaho who, upon information and belief, is headquartered in Memphis, Tennessee, and is contracted to provide medical care to IDOC inmates. Corizon is sued in its individual and official capacities. Defendant has acted under color of State law.

10.  Defendants Several Unnamed Members of Corizon UMT (Utilization Management Team), whose names and addresses have been refused to Plaintiff, are sued in their individual and official capacitites. Defendants acted under color of State law.

11.  Defendant Dr. Rebekah Haggard is an individual who, upon information and belief is Regional Medical Director for Corizon and resides in Ada County, Idaho, is sued in her individual and official capacities. Defendant acted under color of State law.

2

12.   Defendant Gen Brewer, Director of Nursing (D.O.N.) for Corizon, is an individual who, upon information and belief, resides in Ada County, Idaho, Defendant Brewer is the only defendant also accused of violating Plaintiff's First Amendment Rights. Defendant is sued in her individual and official capacities. Defendant acted under color of State law.

13.   Defendant Sila Worley, Nurse Practitioner (N.P.) is an individual who, upon information and belief, resides in Ada County, Idaho, is sued in her individual and official capacities. Defendant acted under color of State law.

14.   Defendant Rona Siegert, CCHP-RN, is an individual who, upon information and belief, is medical contract monitor for IDOC and resides in Ada County, Idaho, is sued in her individual and official capacities. Defendant acted under  color of State law.

15.   Warden Alberto Ramirez, Warden at ISCI, is an individual who, upon information and belief reaides in Ada County, Idaho, is sued in his official capacity only for injunctive relief. Defendant acted under color of State law.

16. Defendant Josh Tewalt, Director of the IDOC, is an individual who, upon information and belief, resides in Ada County, Idaho, is sued in his official capacity only for injunctive relief. Defendant acted under color of State law.

17. Defendants John Does I.-X. are individuals, names and addresses unknown at this time, sued in their individual and official capacities. Defendants acted under color of State law.

### IV. EXHAUSTION OF STATE REMEDIES

18.   Plaintiff twice exhausted administrative remedies available to him and attempted to file a third grievance which was returned without action (RWA).

3          See exhibits I., II., III.

## V. FACTS

19. Plaintiff suffers from a serious medical condition--"mult-level degenerative changes of the lumbar spine with multi-level canal and foraminal narrowing." MRI IMPRESSION, St.Lukes 08/31/17 St. Luke's Imaging Center

20. Comparisons of Plaintiff's 06/15/17 and 05/24/19 X-ray Impressions show Plaintiff's condition progressing from "significant" to "severe."

21. Plaintiff suffers 3-5/10 chronic pain and level 7-8/10 acute pain from scoliotic curvature of the spine and multi-level degenerative disc changes.

22. Plaintiff suffers constant level 3-5/10 sciatic pain and level 7-9/10 acute sciatic pain. DECLARATION OF GERALD BARCELLA CV 81-1165-S-BLW.

23. Plaintiff was first diagnosed with "chronic sciatica by Corizon in 2006.

23. Plaintiff cannot attend church, sweatlodge, Alcoholics Anonymous meetings programs, school, or social functions without excruciating pain from sitting.

24. Plaintiff can only wash his lower extremities with difficulty and pain. Plaintiff cannot sit, stand, walk, recline or lay on his back for more than 10 minutes without serious pain.

25. Plaintiff has to try to hide his pain and injury due to the prison environment.

26. Plaintiff can only find sometimes find relief by laying on his stomach for hours. He's filed about 100 HRSs and Concerns requesting effective care.

27. Plaintiff was diagnosed with chronic kidney disease due to Corizon's overprescription of NSAID drugs since 1998.

28. Plaintiff has gone from a robust athlete in 2016 to a sedentary pain-ridden individual .

29. Plaintiff's pain has since 2019 spread from his lower right leg to his whole right and left sides, glutes to toes, entire pelvic area and right testicle.

4

30. On 02/19/19 Plaintiff filed Grievance 190000153. EXHIBIT I.

31. Defendants, since 2017, have engaged Plaintiff in multiple cycles of "circular care," sending him to different providers, requiring him to "start over from the beginning" with treatment.

32. Plaintiff was required to participate in several six week long periods of physical therapy (PT) to learn Corizon's Home Exercise Program (HEP) which often increased Plaintiff's pain and injury.

33. On 06/19/19 Plaintiff fell headlong into another inmate in the Pendyne hall serving line nearly resulting in a fight.

34. 08/21/19 OPC NOTES: Rogers, William N.P. for HSR 1285664 state: "PT reports pain is interfering with ADLs causing pain at work. States he cannot sit long enough to sit through church or sweatlodge w/o pain."

35. "Reports sciatic pain has spread through R glute. Throbs and cramps through hip.  Outside leg feels like leg broken—see handwritten scanned document PT provided today documenting reports of sx (symptoms) and worsening nature impacting ADLs. Continue conservative treatment."

36. "CONSULTATION REQUEST: Offsite-clinic Service Priority: routine. NOTES: consult placed to neurosurg.—will appeal it if ATP d/t severity of sx (symptoms) and worsening nature impacting ADLs. Continue conservative treatment."

37. 08/31/19 Corizon physical therapist Lindsay Partridge-Gremmo documented in Plaintiff's medical record that Plaintiff had exhausted any benefit from physical therapy, writing, "there is little more I can do for him at this time."

38. On 10/21/19 Plaintiff was transported to St. Lukes hospital where he was seen in clinic by neurosurgeon William Bradley.

39. Dr. Bradley went over Plaintiff's 2017 MRI, in depth, with Plaintiff.

40. Dr. Bradley told Plaintiff that Plaintiff's sciatic pain was probably caused by foraminal narrowing at the L4-L5 and L5-S1 levels of the lumbar spine.

41. Dr. Bradley told Plaintiff that he was sure Plaintiff's condition had significantly worsened since his 2017 MRI and that Plaintiff would probably be in pain for the rest of his life due to Corizon's inaction since that time.

42. Neurosurgeon Bradley explained the causes and treatments for foraminal narrowing and explained the dangers of back surgeries.

43. Dr. Bradley said he wanted to first try epidural steroid injections (ESIs) in lieu of surgery, and he ordered a follow-up in clinic two to three weeks after the injections were administered to see if they worked.

44. Before Plaintiff left Dr. Bradley said, "we'll get you feeling better."

45. It is noted that Dr. Bradley was very unfamiliar with the IDOC and ISCI, asking correctional officers present, "is there even a nurse there who can change bandages?" Dr. Bradley stated that he'd "only operated on one other inmate."

46. Around 11/11/19 Corizon Utilization Management Team (UMT) approved the epidural steroid injections (ESIs) but immediately denied Dr. Bradley's ordered follow-up in clinic two to three weeks after injections in favor of an onsite follow-up at ISCI with one of their own non-specialist nurse practitioners.

47. Upon  information and belief Corizon routinely denies Offsite Surgical consult (OSS) referrals a majority of the time to save money through denial of care

48. Upon information and belief that Corizon's belief that the impending

Balla Termination hearings would lift oversight of their actions that Corizon began denying many OSS ordered follow-ups that would result in more permanent, but costlier, procedures for patients.

49. Corizon denied an OSS ordered follow-up, by an orthopedic surgeon for Plaintiff in 2018-19 in an unrelated matter  showing a common theme.

50. In November 2019 Plaintiff went to sick call complaining of unbearable pain and new symptoms, but had to leave before being seen due to it being too painful to stay seated on hardwood benches for over an hour.

51. In January 2020 Plaintiff went to sick call again complaining of new and worsening pain and symptoms. Once again Plaintiff had to leave without being seen after being forces to remain seated on hard wooden benches for over an hour due to excruciating pain.

52. On 02/21/20 Plaintiff received two epidural steroid injections (ESIs) to the lower lumber regions of his spine at St. Luke's Imaging Center. The injections failed to bring any relief.

53. The surgeon administering the ESIs told Plaintiff that ESIs were only successful in less than 30% of patients who recieved them.

54. At 03/03/20 OPC at ISCI Plaintive related lack of relief from the ESIs and worsening pain and new symptoms. The provider put in another OSS referral for Plaintiff.

55. Corizon Utilization Management Team (UMT) denied this follow-up OSS referral just as they have with at least six other Corizon provider OSS referrals for Plaintiff.

56. At 03/03/20 OPC with N.P. Bahader Plaintiff begged her to appeal UMT's recent denial of this OSS referral due to new symptoms and severe pain. Bahader refused and told Plaintiff he had to "start his treatment over from he the beginning."

57. At 03/31/20 OPC with N.P. Rogers Plaintiff once again complained of new and worsening pain and symptoms telling Rogers that his pain had now spread to his entire pelvis, right testicle, and was now prevalent in his left side instead of sporadic, and had spread to his entire left side-from lower back to toes-and was now going down the fronts of both legs--no longer confined to the sides of the legs.

58. N.P. Rogers told Plaintiff that until he began to uncontrollably defecate upon himself that UMT probably wouldn't approve a new OSS referral.

59. On 04/08/20 Plaintiff filed Grievance 200000277 EXHIBIT II, in which he feared becoming crippled, was suffering, that all previous treatments had failed and that he wanted effective treatment. See also DEFENDANT SIEGERT

60. On 05/02/20 Plaintiff could not raise himself, unaided, from a squatting position. Plaintiff began having worsening back stiffness, pain and having more and more problems bending over and straightening himself up after bending over.

61. On 05/08/20 Plaintiff's grievance was effectually denied saying he would be put in for another OSS referral after current Covid-19 restrictions were lifted. That OSS referral was denied by UMT as well.

62. On 05/08/20 Plaintiff was again seen by Defendant Sila Worley, N.P. at OPC at which time he requested he be put in for another OSS referral        See DEFENDANT SILA WORLEY, N.P. and DEFENDANTS SEVERAL MEMBERS OF CORIZON UMT.

63. On 05/21/20 Plaintiff was again seen in OPC by Defendant Worley at which time he was told that UMT had denied his OSS request. See again DEFENDANT SILA WORLEY, N.P. and DEFENDANTS SEVERAL UNNAMED MEMBERS OF CORIZON UMT.

64. On 05/22/20 and again on 06/03/20 Plaintiff sent Worley two Concern Forms asking her to appeal UMT's denial of this OSS referral based on faulty information and reasoning.  See DEFENDANT WORLEY

65.  On 06/04/20 Plaintiff nearly fell in the Pendyne chow hall while attempting to stand after finishing his meal. Plaintiff can barely make it to chow and back some nights.

66.  On 06/04/20 Plaintiff filed Grievance 200000525 which was denied for the issue already having been grieved. EXHIBIT III.

67.  Since on, or about, 06/23/20 inmates at ISCI have been restricted to their housing units due to quarentining and preventative measures due to Covid-19.

68.  Since that time Plaintiff has only had the option of one hour per day out of his tier. Plaintiff has not gone to his job at education.

69.  On, or about, 07/27/20 Plaintiff has begun wiping with bleach and lightly cleaning his tier's tiny dayroom and bathroom for about an hour each day.

70.  Despite another period of "activity modification" Plaintiff has found no relief from his pain and debility.

71.  As a matter of fact, Plaintiff never worked in the IDOC between 1998 and mid-2017 and was in pain from his injury since, at least, 2006.

72.  Plaintiff's pain is worse during any periods of total inactivity.

72.  Despite the recent periods of "activity modification" Plaintiff has, at times, developed difficulty urinating due to pain from standing, and has over the last month or so, began periodically experiencing horribly brutal bolts of sciatic pain radiating down the fronts of both legs while defecating.

73.  Plaintiff seldom gets the previous relief he did from laying on his stomach for hours as he used to.

74.  Due to pain while attempting to perform UMT ordered Home Exercis Program (HEP) it offers little relief when Plaintiff can even do it.

75.  Plaintiff had to quit three jobs due to his injury; one in 2019, two in 2020, and couldn't return to work as a cabinet maker due to his pain and injury.

DEFENDANT CORIZON MEDICAL

76.   Defendant violated Plaintiff's rights as stated and incorporated in paragraphs 1.-6. and in all prior and forthcoming paragraphs containing actions or lack of actions of deliberate indifference to Plaintiff's serious medical needs.

77.   Upon information and belief Corizon promotes the use of NSAID drugs for unethically long periods of time to deny more expensive care and increase profits, and caused Plaintiff's chronic kidney disease.

78.   Upon information and belief Corizon unethically delayed and denied effective treatment for Plaintiff, not meeting community standard of care, by not allowing Plaintiff to be effectively treated for more than one issue at a time; often for years. Including on or about 03/12/18; 11/18/18; and 12/04/18.

DEFENDANTS SEVERAL UNNAMED MEMBERS OF UMT

79.   Utilization Management Team Members violated Plaintiff's rights as alleged in paragraphs 1 through 6 and and all actions and allegations attributed to them in all aforementioned and forthcoming paragraphs.

80.   Between 2017 and 2019 UMT members denied at least six provider proffered Offsite Surgical (OSS) referrals for Plaintiff including one that was already approved, including on or about 09/01/17; 12/04/18; 08/21/19; 11/05/19; 03/02/20; and 05/14/20.

81.   Defendants delayed epidural steroid injections (ESIs) for an unreasonable period of time, by denying provider requests for such.

82.   Despite having little knowledge of Plaintiff's condition UMT members denied all provider OSS referrals for Plaintiff other than the single one that resulted in ESIs. Defendants refused to listen to the repeated recommended advice of their providers to obtain real treatment for Plaintiff.

83.   UMT members immediately denied Neurosurgeon Bradley's order for a patient follow-up in clinic with him two to three weeks after ESIs were to

be administered to discuss further treatment options if ESIs failed, which they did.

84.   Upon information and belief UMT denied this surgeon's orders for follow-up in clinic to avoid further treatment for Plaintiff, to save money.

85.   UMT has effectively relegated Plaintiff to less care than he has previously been given as all of that has been proven ineffective. There are no further options given to Plaintiff.

86.   Plaintiff's current treatment plan  is, in effect, no treatment at all.

87.   Defendants' actions have literally caused Plaintiff permanent physical damage.

### DEFENDANT DR. HAGGARD

88.   Dr. Haggard violated Plaintiff's rights as stated in paragraphs 1 through 6 and, as Plaintiff's primary care provider and Corizon Regional Medical Director, is responsible for all actions, or lack of actions, by herself, Corizon providers, administrators, actors, agents and contractors that violated Plaintiff's rights as set forth in all aforementioned and forthcoming paragraphs.

89.   Dr. Haggard has had multiple interactions with Plaintiff over the last few years through HSRs, Concern Forms, conversations and conversations with providers concerning Plaintiff's condition.

90.   Defendant has been responsible for denying Plaintiff effective pain relief and prescribing and overseeing prescription of NSAID drugs to Plaintiff despite Grievances that the NSAIDs were killing Plaintiff's kidneys.

91.   Plaintiff was forced, for years, to rely on toxic NSAID drugs despite their negative effects upon his kidneys or receive no pain relief at all.

92.    On 03/12/20 Plaintiff sent a Concern Form to Dr. Haggard requesting she appeal, or override, UMT's denial of Plaintiff's recent OSS denial.

Dr. Haggard refused to do either.

93.    Upon information and belief Defendant Haggard testified at the recent Balla Termination hearings that she had the power to override UMT denials of care.

### DEFENDANT GEN BREWER, D.O.N.

94.    As Director of Nursing for Corizon Defendant Brewer violated Plaintiff's rights as stated in paragraphs 1 through 6 and as described in all aforementioned, and forthcoming paragraphs through her actions or inactions.

95.    Defendant further violated Plaintiff's right to free speech under the First Amendment to the Constitution and laws of the United States for retaliation in her reply to, and actions surrounding, GRIEVANCE 190000153 EXHIBIT I.

96.    Upon information and belief Defendant Brewer further violated Plaintiff's civil rights under the Health Insurance Portability and Accountability Act (H.I.P.A.A.) when she contacted Plaintiff's private employer site manager at Idaho Correctional Industries, and told him that Plaintiff, "was trying to get a back surgery," and threatened Plaintiff's employment there.

97.    Plaintiff was threatened , humiliated, and told not to procede with any back surgeries and was told if he continued pursuing treatment Corizon would "pull"    (prevent) him from working any longer.

98.    Plaintiff was scorned and looked down upon by site manager until his end of enmployment due to this.

99.    Defendant may have had the right to inquire into Plaintiff's work duties but she did not have the right to maliciously disclose Plaintiff's

confidential medical information in an attempt to prevent Plaintiff from
legitimately using IDOC Grievance procedures to complain about
a denial of treatment that, in itself, is a violation of Plaintiff's Eighth
Amendment rights to be free from cruel and unusual punishment.

100. "WRONGFUL DISCLOSURE OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION"
"SEC. 1177. (a) OFFENSE--A person who knowingly and in violation of this
part--(3) discloses individually identifiable health information relating
to another person, shall be punished as provided in subsection (b)."

101. PENALTIES--A person described in subsection (a) shall--"(1) be fined
not more than $50,000, imprisoned not more than 1 year, or both;"

102. "Under Paragraph (3) of subsection (b) (3) a person who does so with
"malicious harm, be not fined more than $250,000, imprisonment more than
10 years, or both."

103. Obviously HIPAA violations are serious matters.

104. Defendant's written response to Plaintiff's Grievance with, or without,
her accompanying actions were intended to **threaten** and intimidate Plaintiff
into stopping his pursuit of effective treatment for his serious pain and
injury.

105. Plaintiff   lives in fear of retaliation from Corizon Medical and
IDOC officials due to Defendant Brewer's actions.

106. Upon information and belief one of Defendant's duties as D.O.N. is
answering inmate Grievances in a manner to discourage pursuit of medical
treatments Corizon does not wish to pay for.

107. Upon information and belief, as first responder to grievances, Defendant
virtually denies every grievance request for more adequate treatment that
comes before her.

13

DEFENDANT SILA WORLEY, N.P.

108. As a Nurse Practitioner for Corizon, Defendant violated Plaintiff's rights as stated in paragraphs 1 throuh 6 and through any actions related to her that violated plaintiff's rights in all aforegoing and forthcoming paragraphs.

109. At 02/04/20 OPC Defendant told Plaintiff that his prescription for Indocyn would not be rewritten because "someone had concerns" about its use by Plaintiff. Upon information and belief this is because of it causing Plaintiff's chronic kidney disease.

110 Defendant then prescribed, also nephro/hepatoxic Ibuprofen to Plaintiff.

At 05/08/20 OPC Plaintiff described new pain and new acute symptoms causing more compromisation of activities of daily living.

111. Plaintiff told Worley that his sciatic pain had progressed from predominantly in his right side to both sides of his body and had encompassed his entire pelvic area and right testicle.

112. Worley responded, "sciatica will do that," but made no reference to this in Plaintiff's medical record.

113. Plaintiff further told Worley that he was suffering leg weakness and that by the afternoon he was having trouble bending over and straightening back up and that he was only able to work two and one half to three hours per day  even though his job was not physically demanding.

114. Worley said she'd put Plaintiff in for another OSS referral, but she doubted it would be approved "because you can do all that."

115. Defendant kept insisting Plaintiff take medications that had no, zero, positive effects on Plaintiff's pain and symptoms and caused negative physiological and psychological effects to Plaintiff.

116. Worley prescribed Ibuprofen to Plaintiff even though he said it did not help his pain.

14

117. At 05/21/20 OPC Worley informed Plaintiff that UMT had denied his OSS referral. Was denied in favor of alternative (conservative) treatment due to "no new neural deficits or new acute symptoms."

118. Defendant once again tried to get Plaintiff to engage in another useless cycle of circular caresuggesting every drug that was tried, and didn't work, and another cycle of useless and harmful physical therapy that would be denied anyway as not being able to help Plaintiff.

119. Worley further tried to get Plaintiff to to take doses of Gabapentin during the daytime from which Plaintiff got no relief and caused negative effects.

120. Plaintiff further told Defendant that he was having problems withstanding the UMT ordered Home Exercise Program (HEP) due to pain and was having issues with stiffness, bending over and straightening back up and standing from a squatting position.

121. Plaintiff informed Worley that he would soon have to quit his job due to pain and inability to perform his duties.

122. Worley told Plaintiff until he could no longer walk, work or do UMT ordered HEP that UMT would not offer further treatment.

123. Plaintiff asked Defendant if he was supposed to lay on his stomach 24 hours a day for the rest of his life to obtain relief.

124. Worley became angered and told Plaintiff, "you can leave now."

125. On 05/22/20 and again on 06/03/20 Plaintiff sent Worley Concern Forms asking her to appeal UMT denial of OSS referral due to the inaccuracy of information that they based their decision on, including information witheld by Worley from Plaintiff's medical record including new pain and new acute symptoms, including pain spreading to Plaitiff's pelvis, testicle and left side.

126. One of Defendant Worley's functions as a Corizon provider is to serve in the role of "gatekeeper" to all, but the most basic care, for patients.

Without accurate recording of new and worsening symptoms this role is seriously compromised or denied.

128. Defendant had both direct, and indirect, in participation of in denial of effective treatment of Plaintiff's serious medical needs.

129. Plaintiff has to try to hide his pain and infirmities due to a prison being a very bad place to show weakness of any kind.

### DEFENDANT RONA SIEGERT, CCHP-NP

130. Defendant is an individual who, upon information and belief, is the IDOC health contract monitior, and who, upon information and belief, resides in Ada County, Idaho and oversees Corizon's actions or inactions involving inmate health care.

131. Defendant violated Plaintiff's rights as stated in paragraphs 1 through 6 for all reasons listed in aforementioned and forthcoming paragraphs that are attributed to her job performance, directly or indirectly.

132. Defendant was level III. Responder to both of Plaintiff's Grievances. EXHIBITS I. and II.

133. Upon information and belief Defendant has failed to hold Corizon accountable to their contract mandates.

134. In responding to Plaintiff's Appeal on Grievance 190000153 Defendant delayed and denied ESI injections by telling Plaintiff to get an injection by Corizon staff and told Plaintiff to do phusical therapy, which he'd already done, and did do again. That injection, at ISCI, brought relief for two weeks and delayed ESIs for months.

135. In Plaintiff's 04/08/20 Grievance 200000277 stated he had exhausted all available site-specific treatments at ISCI and Corizon denied his follow-up to his OSS appointment and/or new OSS referrals to obtain effective treatment unavailable at ISCI.

16

136. Level I and Level II. Responders to Plaintiff's Grievance 200000277 both told Plaintiff to put in new HSRs (more circular treatment).

137. In his Grievance Appeal Plaintiff stated that, (1) he had exhausted all treatment options at ISCI and, (2) he had developed chronic kidney disease as a result of Corizon's ineffective and wrongful treatments and, (3) that N.P. Rogers told Plaintiff at OPC that UMT would not approve an OSS referral until Plaintif lost bowel control and, (4) that Plaintiff wanted the denied OSS follow-up in clinic ordered by Neurosurgeon Bradley and, (5) that Plaintiff was scared he would become crippled due to UMTs deliberate indifference.

138. Defendant replied that Plaintiff would be put in for another OSS as soon as the current Covid-19 restrictions in the community were lifted.

139. Defendant Siegert never requested or ordered the relief Plaintiff requested.

140. The OSS referral was put in by Corizon Providers and was denied around 05/11/20.

141. Plaintiff is in the same position that he was before filing both Grievances and was in in 2017 when before he had his MRI done.

142. Upon information and belief Defendant Siegert cosigns virtually all Corizon Grievance denials.

143. Upon information and belief Defendant cosigns virtually all Corizon Grievance denials as part of a concerted effort between IDOC and Corizon to reduce contract costs to IDOC.

144. Upon information and belief Corizon denies virtually all inmate grievances requesting anything but minimal care.

DEFENDANT WARDEN ALBERTO RAMIREZ

145. As warden at ISCI Mr. Ramirez is responsible for the care and housing of inmates under his authority. Because Warden Ramirez has control over

Plaintiff's physical body he has authority to order or deny transport of Plaintiff to and from offsite medical providers. Having such control he is named in his official capacity for injunctive relief.

## DEFENDANT DIRECTOR JOSH TEWALT

146. As Director of the IDOC this defendant is responsible for care and housing of IDOC inmates and is one of the individuals having the most control and power over inmates.  Director Tewalt has the authority to order or deny transport of Plaintiff to and from offsite medical providers. Having such authority he is named in his official capacity for injunctive relief.

## VI. LEGAL CLAIMS

147. Plaintiff realleges, and incorporates, by reference, all claims in Paragraphs 1 through 194.

148. Defendants' deliberate indifference to his serious medical condition, including serious pain, injury and suffering, imminent serious pain, injury and suffering and resultant chronic kidney injury and disease and mental anguish while in the custody of the Idaho Department of Corrections (IDOC) and Plaintiff's rights to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and laws of the United States were violated. Defendants all acted under color of State law.

149. In addition, Defendant Gen Brewer, Director of Nursing for Corizon is sued for violating Plaintiff's First Amendment Right to free speech under the Constitution of the United States through her threats and retaliation.

150. Defendant Brewer further violated Plaintiff's rights to privacy and confidentiality by criminally violating the Health Insurance Portability and Accountability Act (HIPAA) in her retaliation against Plaintiff for using State Administrative Policy to claim deliberate indifference claims against her employer Corizon Medical.

18

151. Deliberate indifference constitutes permanent injury.

152. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of State law, of rights secured by the Constitution, and laws of the United States. This Court has jurisdiction over 28 U.S.C Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

153. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declarative and injunctive relief which the Plaintiff seeks.

    Pursuant to Federal Rules of Civil Procedure 38 Plaintiff demands a jury trial on all issues so triable.

## VII. PRAYER FOR RELIEF

154. WHEREFORE, Plaintiff respectfully prays this Court enter judgment granting Plaintiff:

155. A Declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

156. A Preliminary and Permanent Injunction ordering Defendants Corizon Medical, Several Unnamed Members of Corizon's Utilization Management Team (UMT), Dr. Rebekah Haggard, Corizon Regional Medical Director, Gen Brewer, Director of Nursing (D.O.N. for Corizon), Sila Worley, Nurse Practitioner (N.P.), for Corizon, Rona Siegert, CCHP-RN for IDOC, Warden Alberto Ramirez, ISCI, Director Josh Tewalt, IDOC, and John Does I.-X. requiring defendants to provide Plaintiff effective treatment for his serious injury, pain and suffering, beyond what has already been tried, including neurosurgery and/or orthopedic surgery, and sending Plaintiff to receive an MRI, and any other

necessary imaging to properly assess Plaintiff's current injury.

157. Preliminary and Permanent Injunctions ordering Defendants to send Plaintiff to a nephrologist for assessment and treatment of his chronic kidney disease.

158 Compensatory damages against each defendant in the amount to be determined at trial, both jointly and severally, against each defendant, for serious often excruciating pain, suffering unnecessary physical injury and debility, imminent pain and injury, suffering, chronic kidney disease, and mental anguish.

159. A Temporary Restraining Order restraining Defendants, and any of their agents, actors, actors or associates, form retaliating against Plaintiff in all areas of his lifehis life including, but not limited to, residency, housing, programming, employment, parole eligibility, recreation, excessive searches, and general harassment and humiliation. Just one retaliative phone call can literally ruin Plaintiff's entire life.

160. Punitive damages against each individual in the amount to be determined at trial.

161. A jury trial on all triable issues.

162. Attorney and expert witness fees and costs.

163. Plaintiff's costs in this suit.

164. Any additional relief this Court deems just, proper, and equitable.

DATED: August 27, 2020

Respectfully Submitted

*Gerald Angelo Barcella*

## VERIFICATION

I swear under penalty of perjury the aforementioned facts are true to the best of my ability, and those upon information and belief, I believe to be true.

Executed at Boise, Idaho on August     , 2020

*Gerald Angelo Barcella*
Gerald Angelo Barcella

20