UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ANGELO BARCELLA,<br><br>                    Plaintiff,<br><br>         v.<br><br>CORIZON MEDICAL, SEVERAL UNNAMED MEMBERS OF CORIZON UMT, DR. REBEKAH HAGGARD, GEN BREWER, RONA SIEGERT, WARDEN ALBERTO RAMIREZ, DIRECTOR JOSH TEWALT, and JOHN DOES I-X,<br><br>                    Defendants. | Case No. 1:20-cv-00427-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Gerald Angelo Barcella's Complaint as a result of his status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of its claims should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, the Court enters the following Order permitting Plaintiff to proceed on some of his claims.

1.      **Screening Requirement**

The Court must review complaints filed by paupers and prisoners seeking relief against a governmental entity or employee to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

## 2.      Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC") currently incarcerated at the Idaho State Correctional Center ("ISCI"). Plaintiff has suffered from back pain for about 13 years. Over the past several years, his back pain has worsened to the degree he now describes it as "excruciating." He has sciatic pain and other nerve pain the radiates into his legs, hips, buttocks, and testicle. Plaintiff asserts that

the sedentary lifestyle brought about by COVID-19 has increased his pain. While in his cell, Plaintiff used to be able to find relief from lying on his stomach, but that position no longer relieves his pain. He completed physical therapy, which did not help, and which sometimes increased, his pain.

Medical providers approved an off-site specialist appointment with neurosurgeon William Bradley. At the appointment on October 21, 2019, Dr. Bradley told Plaintiff that he thought Plaintiff's pain was caused by foraminal narrowing at the L4-L5 and L5-S1 levels of the lumbar spine. Dr. Bradley wanted to first try steroid injections before considering surgery, with follow-up to occur two to three weeks after the injection. Dr. Bradley explained the dangers of back surgery to Plaintiff. In accordance with Dr. Bradley's advice, Plaintiff received an off-site spinal steroid injection on February 21, 2020. A few weeks later, on March 3, 2020, he reported to prison medical personnel that the injections did not help the pain.

Plaintiff requested an off-site follow-up consultation with Dr. Bradley. As of the date he filed the Complaint, Plaintiff had not been scheduled to return to Dr. Bradley. In response to Plaintiff's grievance, medical personnel cited "COVID-19" as their reason that he had not yet been sent to the specialist for an MRI and surgery consultation.

Plaintiff further asserts that prison medical providers have caused him chronic kidney disease by prescribing NSAID medications in large doses for a lengthy period of time for treatment of his pain, especially the drug Indocin.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

Plaintiff sues Corizon Medical and its staff who participated in his treatment, as well as IDOC staff who have delayed or denied medical care. He seeks monetary, declaratory, and prospective injunctive relief.

### 3.      Standard of Law for § 1983 Claims

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish a causal connection by alleging that a supervisor (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

injury"; (3) failed to act or improperly acted in the training, supervision, or control of his

subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in

"conduct that showed a reckless or callous indifference to the rights of others." *Id*. at

1205-09. A plaintiff may also seek injunctive relief from officials who have direct

responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of

Higher Educ*., 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a private entity performing a government

function—such as Corizon—a plaintiff must allege that the execution of an official policy

or unofficial custom inflicted the injury of which the plaintiff complains, as required by

*Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *Tsao v.

Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private

entities performing a government function). Under *Monell*, the requisite elements of a §

1983 claim against a private entity performing a state function are the following: (1) the

plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3)

the policy or custom amounted to deliberate indifference to plaintiff's constitutional

right; and (4) the policy or custom was the moving force behind the constitutional

violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

An unwritten policy or custom must be so "persistent and widespread" that it

constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper

custom may not be predicated on isolated or sporadic incidents; it must be founded upon

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

### 4.      Standard of Law for Eighth Amendment Claims

The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison [officials] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). However, medical malpractice or negligence will not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060.

The Eighth Amendment does not provide a right to a specific treatment, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), and differences in judgment between an inmate and prison medical providers regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To state an Eighth Amendment claim "involving choices between alternative courses of treatment," the plaintiff must plausibly allege "that the chosen

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). In *Toguchi v. Chung*, where medical records showed that medical personnel had been "consistently responsive to [the inmate's] medical needs," and there was no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," the plaintiff was not permitted to proceed to trial on an Eighth Amendment claim. *Id.*, 391 F.3d at 1061. On the other hand, in *Snow v. McDaniel*, a prisoner was permitted to proceed on his Eighth Amendment claim that for three years prison doctors had ignored the consistent recommendation by two outside specialists that the prisoner needed hip surgery to alleviate his severe pain and mobility issues. *Id.*, 681 F.3d 978, 981 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

5.    **Discussion**

    A.    *Medical Defendants*

Plaintiff's Complaint states a colorable Eighth Amendment medical treatment claim with his allegations that Defendants Dr. Rebekah Haggard, Nurse Brewer, and N.P.

Sila Worley treated him multiple times for his symptoms in the same ways without taking additional or different steps to resolve or reduce his pain. He asserts that IDOC medical contract monitor, Rona Siegert, denied his claims and refused to do anything further for him on behalf of the IDOC, putting his surgery consultation on hold indefinitely during the ongoing COVID-19 pandemic. Plaintiff may proceed on his claims against these persons in their individual capacities for monetary damages and in their official capacities for prospective injunctive relief only.

As to Defendant Corizon, the Court concludes that Plaintiff's allegations that several different medical personnel sent him down a circular conservative treatment path over and over again with no alleviation of his pain and no follow-up after the steroid injections did not work—as well as telling him that he cannot obtain specialist care during the COVID-19  pandemic (which has no end in sight)—raises a reasonable inference that the alleged lack of adequate medical treatment resulted from a policy, custom, or practice of Corizon. Thus, Plaintiff may proceed on his Eighth Amendment claims regarding his medical treatment against Defendant Corizon.

### B.   *Unnamed Individuals*

Plaintiff does not know the individuals on the Corizon Utilization Management Team (UMT) who denied him a surgery consultation. Corizon can provide that information during the disclosure and discovery period. Plaintiff may not proceed against these unidentified defendants now, but may amend them into the suit at a later date.

In addition, Plaintiff names ten potential "John Doe" defendants. The use of "Doe" to identify a defendant is not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

1980). Here, there are no allegations demonstrating what the Doe defendants did to violate Plaintiff's rights. Plaintiff can discover and amend his Complaint with the names of any other individuals who participated in his medical treatment before the amendment deadline.

### C.   Injunctive Relief Claims

Plaintiff names Warden Alberto Ramirez and IDOC Director Josh Tewalt as defendants in their official capacities for the purpose of injunctive relief only. The Eleventh Amendment does not bar suits *for prospective injunctive relief* filed against state officials. *Ex Parte Young*, 209 U.S. 123, 157-58 (1908). Therefore, a plaintiff may name as defendants officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ*., 166 F.3d 1032, 1036 (9th Cir. 1999). Because Warden Ramirez is Plaintiff's direct custodian and can implement any injunction relief the Court could order, there is no need to have the IDOC Director named in this suit. Plaintiff may proceed against Warden Ramirez in his official capacity, but not against Director Tewalt.

### D.   Retaliation Claims

Plaintiff alleges that Gen Brewer, the director of nursing who responded to his grievance, threatened him and retaliated against him when she wrote the following:

> I am sorry NP Rogers' request was returned with an alternative treatment plan for the back pain you have had for 13 years. I will request the provider review your case. I see you at work at C.I. and lifting may be aggravating and making your pain worse. If any restrictions are added, we will schedule you via HSR request, i[f] you wish to discuss.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

(Dkt. 2-1, p. 4.)

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

The timing of an official's action can constitute circumstantial evidence of retaliation, but there generally must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

Here, part of the responsibility of Defendant Brewer as a respondent in the grievance process was to investigate Plaintiff's claims. She looked into his Correctional Industries job and determined that he was performing it without restrictions, but that

lifting items may be aggravating his back pain. Plaintiff did not say in the grievance that it generally was lack of activity, not too much activity, that exacerbated his pain.

The Court sees nothing threatening or retaliatory in the grievance response. Rather, Nurse Brewer said that she would request that the medical provider review Plaintiff's case again. She also advised that, if in the future, he began to need work restrictions (meaning his back injury began to prevent him from doing his regular work), he should submit another HSR form to discuss that development with the medical unit. This response was appropriate for Plaintiff's description of his problem (it was not until the grievance appeal process, after Brewer had answered, that Plaintiff made it clear that inactivity made his sciatica worse, not activity).

Generally, a medical provider seeing a patient for a reported back injury is going to ask a patient whether his or her back injury interferes with her ability to lift or perform work. Brewer was entitled to obtain that information directly from Plaintiff's prison employment supervisor because Plaintiff is a prisoner. Plaintiff cannot put his medical condition at issue through a grievance, and then expect the investigating responder not to discuss the particularities of whether the job the prisoner is assigned is one fit for his individual medical condition—here, a 13-year-long back condition where the prisoner is asserting that his back pain is so severe that all conservative treatments have failed and that back surgery is the only remaining option. Plaintiff has failed to state a claim upon which relief can be granted under *Iqbal/Twombly*. Plaintiff may not proceed on a First Amendment claim against Nurse Brewer.

E.      *HIIPA Claim*

The Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42

U.S.C. § 1320, *et seq*., provides no private cause of action, meaning that only the state or

a state officer can bring a claim on behalf of an individual whose rights have been

violated. *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007).

Plaintiff cannot proceed on a HIIPA claim against Nurse Brewer for disclosing his

medical information to the Correctional Industries supervisor.

6.      **Conclusion**

Plaintiff may proceed as outlined above. This Order does not guarantee that any of

Plaintiff's claims will be successful; it merely finds that one or more is colorable,

meaning that the claims will not be summarily dismissed at this stage. This Order is not

intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a

determination that one or more of Plaintiff's claims is plausible and should proceed to the

next stage of litigation.

## REQUEST FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiff has filed a motion for a temporary restraining order and preliminary

injunction. Defendants are ordered to respond to the motion within 14 days after entry of

this Order to show cause why Plaintiff should not be provided with a video conference

appointment or in-person appointment with Dr. Bradley or an equivalent provider for a

surgery consultation, if the follow-up visit has not already been scheduled. Thereafter,

Plaintiff may file a reply within 7 days after receiving the response.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 12**

## ORDER

**IT IS ORDERED:**

1.     Plaintiff may proceed on Eighth Amendment claims against Defendants

Corizon Medical, Haggard, Brewer, Worley, and Siegert (for all types of

requested relief) and against Defendant Ramirez (for injunctive relief only).

The First Amendment claims against Brewer are DISMISSED, and

Defendant Tewalt is TERMINATED as a party to this action. If Plaintiff

later discovers facts sufficient to support a claim that has been dismissed,

Plaintiff may move to amend the complaint to assert such claims.[1]

2.     Defendants Haggard, Worley, Brewer and Siegert will be allowed to waive

service of summons by executing, or having their counsel execute, the

Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and

returning it to the Court within 30 days. If Defendants choose to return the

Waiver of Service of Summons, the answer or pre-answer motion will be

due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of

Court will forward a copy of the Complaint (Dkt. 2), a copy of this Order,

---

[1] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 13**

and a Waiver of Service of Summons to the following counsel:

a.      **Mark Kubinski**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of Defendants **Siegert and Ramirez**, and to:

b.      **Kevin West and Dylan Eaton,** Parsons Behle & Latimer, 800 W. Main Street, Suite 1300, Boise, Idaho, 83702, on behalf of Defendants **Corizon Medical, Haggard, Brewer, and Worley**.

3.      Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

4.      If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

5.      The parties must follow the deadlines and guidelines in the Standard

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 14**

Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

6.     Dispositive motions must be filed no later than 300 days after entry of this Order.

7.     Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

8.     The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

9.     All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 15**

name of the pleading or motion, served on all parties to the

litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11,

and Local Rules of Civil Practice before the United States District

Court for the District of Idaho 5.1 and 7.1. The Court will not

consider requests made in the form of letters.

10.    No party may have more than three pending motions before the

Court at one time, and no party may file a motion on a particular

subject matter if that party has another motion on the same subject

matter currently pending before the Court. Motions submitted in

violation of this Order may be stricken, summarily denied, or

returned to the moving party unfiled.

11.    Plaintiff must notify the Court immediately if Plaintiff's address

changes. Failure to do so may be cause for dismissal of this case

without further notice.

12.    Pursuant to General Order 324, this action is hereby returned to the

Clerk of Court for random civil case assignment to a presiding

judge, on the proportionate basis previously determined by the

District Judges, having given due consideration to the existing

caseload.

13.    Defendants must respond to the motion for temporary and

preliminary injunctive relief within **14 days** after entry of this Order

to show cause why Plaintiff should not be provided with a video conference appointment or in-person appointment with Dr. Bradley or an equivalent provider, if the follow-up visit has not already been scheduled. Thereafter, Plaintiff may file a reply within **7 days** after receiving the response.

14.     Plaintiff's "Motion to File an Extended Brief" (Dkt. 4) is DENIED as premature. No brief is required at this time.

15.     Plaintiff's Motion for Appointment of Counsel (Dkt. 3) is DENIED without prejudice, pending receipt of Defendants' response to the preliminary injunction motion, which will give the Court an opportunity to hear from the other side on the potential merits of the case.  There is no constitutional right to counsel in a civil rights case, and Plaintiff has done an adequate job of presenting his claims in his pleadings to date.

16.     The Court does not have Plaintiff's prison trust account statement, although he asserts that it has been sent in by the prison. Plaintiff should show this Order to the prison trust account director and request another copy be sent to the Court.

DATED: October 1, 2020

B. Lynn Winmill
U.S. District Court Judge